UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HOLY CROSS NEIGHBORHOOD ASSOCIATION | * * * | CIVIL ACTION |
| VERSUS | * * | NO. 03-370 Ref. 10-1715 |
| UNITED STATES ARMY CORPS OF ENGINEERS | * * | SECTION "L"(4) |

## ORDER & REASONS

Before the Court is Defendant United States Army Corps of Engineers' ("Corps") Motion to Dismiss Plaintiffs' Third Cause of Action Under the Clean Water Act. (R. Doc. 146). The Court has reviewed the briefs submitted by the parties, heard from the parties on oral argument, and has reviewed the applicable facts and law. For the following reasons, IT IS ORDERED that the Corps' Motion is GRANTED, and Plaintiffs' claims under the Clean Water Act are dismissed without prejudice.

I.  BACKGROUND

The Inner Harbor Navigation Canal ("Industrial Canal") is a manmade waterway that provides access from Lake Pontchartrain and the Gulf Intercoastal Waterway to the Mississippi River in New Orleans, Louisiana. *See Holy Cross Neighborhood Ass'n v. U.S. Army Corps of Eng'rs*, 455 F.Supp.2d 532, 534 (E.D. La. 2006). Navigation traffic passes through the Industrial Canal via a lock that was completed in 1923 by the Port of New Orleans. *Id.* In the River and Harbor Act of 1956, Pub. L. No. 84-455, Congress authorized construction of a replacement lock. The Corps began studying building a new lock and connecting channel in 1960. *Holy*

*Cross*, 455 F.Supp.2d at 534.  In 1997, the Corps issued a nine-volume final Environmental Impact Statement ("EIS") that analyzes the environmental and economic impacts of several alternatives for the project, and signed a record of decision adopting one of the plans for replacing the lock discussed in the EIS.  *Id*. at 535.  This project involves "disposing of approximately three million cubic yards of dredged sediments and soils" into nearby waterbodies and/or using it as backfill for the new lock.  *Id.*  "[C]ontaminants, including heavy metals and polycyclic aromatic hydrocarbons ("PAHs"), are present in the Industrial Canal sediments."  *Id.* at 538-39.

In 2003, Holy Cross Neighborhood Association, Gulf Restoration Network, and Louisiana Environmental Action Network filed a complaint challenging the 1997 EIS and record of decision.  (R. Doc. 1)(Case No. 03-370).  In 2006, the Court enjoined the Corps from continuing with the project until the agency prepared a supplemental EIS.  *Holy Cross*, 455 F.Supp.2d at 540.  The Court based the injunction upon its finding that the 1997 EIS "failed to take a 'hard look' at the environmental impacts and consequences of dredging and disposing of the canal's contaminated sediment" as required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332.  *Id*.  The Court also criticized the EIS for failing to consider "the reasonable dredging and disposal alternatives that the Corps ha[d] recently adopted for maintenance dredging of the same waters," and failing to "adequately address the risks of flooding and hurricanes in general."  *Id*. at 539-41.

Pursuant to the Court's 2006 decision, the Corps prepared a supplemental EIS.  *See* (R. Doc. 1)(No. 10-1715)(Compl. ¶ 20).  The supplemental EIS was finalized in March 2009, and the record of decision for the project was signed on May 20, 2009.  *Id*. at ¶¶ 20-21.  The

2

supplemental EIS adopted a Recommended Plan for its Inner Harbor Navigation Canal Lock Replacement Project. *See* 2009 Supplemental EIS at 56-62. Each alternative action in the Recommended Plan proposes installing a deep-draft lock. *See id.* at 25-70.

On January 19, 2010, in response to the Supplemental EIS, Plaintiffs in the present action, Holy Cross Neighborhood Association, Gulf Restoration Network, Louisiana Environmental Action Network, Citizens Against Widening the Industrial Canal, and the Sierra Club, sent a Notice of Violation to the Corps. *See* (R. Doc. 1, Ex. A)(No. 10-1715). Plaintiffs did not receive a response from the Corps, and on June 10, 2010, filed the present suit against the Corps, alleging the following causes of action: (1) the Corps' action violated the Court's 2006 Order; (2) the Corps' action violated NEPA; and (3) the Corps' action violated the Clean Water Act ("CWA") citizen-suit provision, 33 U.S.C. § 1365(a)(1). *See* (R. Doc. 1)(No. 10-1715). After being transferred to this Section of the Court, on June 25, 2010, the Court ordered that Plaintiffs' new suit challenging the supplemental EIS be consolidated with the prior, related case. (R. Doc. 140)(No. 03-370).

## II.   PRESENT MOTION

### A.   The Corps' Motion

The Corps filed the present Motion to Dismiss Plaintiffs' Third Cause of Action Under the Clean Water Act pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(3). (R. Doc. 146)(No. 03-370). According to the Corps, because the Plaintiffs have failed to allege it has violated an "effluent standard or limitation," there is no waiver of the United States' sovereign immunity pursuant to the CWA's citizen-suit provision, depriving the Court of subject matter jurisdiction. The Corps contends that Plaintiffs' claims against it in its role as a regulator, as

opposed to a discharger, are more properly brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. The Corps alternatively argues that Plaintiffs' CWA claim is unripe since whether the Corps actually discharges relies on whether it will receive future funding to proceed with construction of the project, and the project is not included in the 2010 budget or the proposed 2011 budget.

### B. Plaintiffs' Response

Plaintiffs have filed a Response in opposition to the Corps' Motion. (R. Doc. 154). Plaintiffs claim that the Court possesses subject matter jurisdiction over their CWA claims since they are seeking enforcement of the Corps' duties as a discharger, not a regulator or administrator. According to Plaintiffs, the Court may hear a suit against the Corps for its alleged violation of EPA guidelines under the CWA citizen suit provision, just as it may against any non-governmental entity. Plaintiffs distinguish the cases cited by the Corps on the basis that they involve challenges to agencies as regulators of other parties, not enforcement of EPA guidelines against the Corps.

Additionally, Plaintiffs contend that the Clean Water Act confers jurisdiction for their "forward-looking" claim for relief. Plaintiffs cite *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987), for the holding that jurisdiction is conferred in a CWA citizen suit so long as there is a good faith allegation of violation of an effluent standard or limitation, and claim they have done so in the present case.

Finally, Plaintiffs argue that their Clean Water Act claim is ripe. Plaintiffs refute that lack of funding for the lock project equates to unripeness. Rather, according to Plaintiffs, because the Corps has violated EPA guidelines by failing to select practicable alternatives while

4

planning to engage in continued construction, their CWA claims are ripe.

### C. Corps' Reply

The Corps filed a Reply to the Plaintiffs' Response in opposition. (R. Doc. 163). The Corps refutes the bases put forth by the Plaintiffs' for CWA citizen-suit jurisdiction, contending that, (1) the Corps regulates all discharges of dredged or fill material, including its own, (2) the 404(b)(1) Guidelines do not constitute "effluent standard or limitation," and (3) the 404(b)(1) Guidelines are not enforceable permit limitations. Additionally, the Corps re-urges its unripeness argument on the basis that it is unable to go forward with the project until it receives further funding and has submitted a Declaration in support thereof.

## III. LAW & ANALYSIS

### A. Standard of Review

#### 1. Rule 12(h)(3) Motion

Federal courts are courts of limited jurisdiction and may only exercise that jurisdiction which Congress has granted them. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Pursuant to Federal Rule of Civil Procedure 12(h)(3), a court must dismiss an action if it finds it lacks subject matter jurisdiction. The plaintiff bears the burden of proving subject matter jurisdiction exists. *Kokkenen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

It is axiomatic that neither the United States nor any agency or instrumentality thereof may be sued unless Congress has explicitly consented to suit. *United States v. Dalm*, 494 U.S. 596, 608 (1990). Therefore, to establish jurisdiction over a claim against the United States, a plaintiff must identify a Congressional waiver of immunity or consent to be sued that is clearly and unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Any

limitations that Congress has seen fit to impose upon its consent must be strictly applied and may not be modified by implication. *Block v. North Dakota*, 461 U.S. 273, 287 (1983).

    2.  *Rules 12(c), 12(d), & 56*

The Corps originally brought its Motion pursuant to Federal Rule of Civil Procedure 12(c) which provides that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." However, the Court previously denied Plaintiffs' Motion to Strike Portions of Wingate Declaration submitted by the Corps, effectively permitting review of this Declaration in its entirety for purposes of the present Motion. *See* (R. Doc. 175). Thus, pursuant to Rule 12(d), the Court is required to convert the present Motion into a Rule 56 motion for summary judgment.[1] *See* Fed. R. Civ. P. 12(d).

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the district court "will review the facts

---

[1] Although the Court did not provide formal notice to the parties of its intent to convert the present Motion into a motion for summary judgment, there was constructive notice since Plaintiffs were aware that the Corps attached the Declaration to its Reply brief and objected only to certain sections of the Declaration. *See* (R. Doc. 168); *Mackey v. Owens*, 182 F.3d 915 (5th Cir. 1999)("Nothing in [Rule 12(d)] requires that a party be given express notice by the district court that it intends to treat a motion to dismiss as a motion for summary judgment. Indeed, given the rule's express declaration that a motion to dismiss *shall* be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment."); *accord* 27A Tracey Bateman Farrell, *et al.*, Federal Procedure, Lawyers Edition § 62:479 (2011). Furthermore, Plaintiffs generally acknowledge the accuracy of the information in the Declaration in their Complaint, namely that funding for the project is not available for fiscal years 2010 and 2011. *See* (R. Doc. 1)(No. 10-1715).

drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995)(citing *Celotex*, 477 U.S. at 322-24, and Fed. R. Civ. P. 56). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249 - 50 (citations omitted).

**B.   The Clean Water Act**

The Clean Water Act establishes a comprehensive program to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve that objective, Section 301(a) of the Act prohibits the "discharge of any pollutant by any person" except "as in compliance with" specified provisions of the Act. 33 U.S.C. § 1311(a). The Act provides for permitting programs that allow discharge of pollutants in compliance with its provisions. One such program authorizes the Corps to issue permits pursuant to 33 U.S.C. § 1344 for discharge of dredged or fill material into navigable waters. This is known as CWA Section 404 permitting program.

Under the Section 404 permitting program, the Corps is authorized to issue discharge permits for either specific disposal sites or general permits on a state, regional, or nationwide basis. *See* 33 U.S.C. § 1344. The Corps is required to follow "special policies, practices, and procedures...in connection with the review of applications" for these permits. 33 C.F.R. § 323.1. These general policies and procedures are found in 33 C.F.R. §§ 320, 325, *et seq*. The Corps' "decision whether to issue a permit will be based on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest." 33 C.F.R. § 320.4(a). Additionally, "a permit will be denied if the discharge that would be authorized by such permit would not comply with the Environmental Protection Agency's 404(b)(1) guidelines." *Id*.

The 404(b)(1) guidelines aim to fulfill the goal of the CWA though "control of discharges of dredged or fill material," 40 C.F.R. § 230.1, and apply "to the specification of disposal sites for discharges of dredged or fill material into waters of the United States." 40 C.F.R. § 230.2. These guidelines prohibit "discharge of dredged or fill material" where "there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a). "An alternative is practicable if it is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." *Id.* at § 230.10(a)(2). When the activity associated with a discharge is not water dependant, "practicable alternatives that do not involve special aquatic sites are presumed to be available." *Id.* at § 230.10(a)(3). Additionally, discharge or dredging of fill material is prohibited if it "[c]auses or contributes, after consideration of disposal site dilution

8

and dispersion, to violations of any applicable State water quality standard." *Id.* at §230.10(b)(1). Furthermore, except in certain circumstances, "no discharge of dredge or fill material shall be permitted which will cause or contribute to significant degradation of the waters of the United States." *Id.* at § 230.10(c).

When the Corps itself is seeking to implement dredge-and-fill projects, it must too comply with the 404(b)(1) guidelines. *See* 33 C.F.R. § 336.1(a)("[T]he Corps authorizes its own discharges of dredged or fill material by applying all applicable substantive legal requirements, including public notice, opportunity for public hearing, and application of the section 404(b)(1) guidelines").

### C. Subject Matter Jurisdiction: CWA Citizen-Suit Claim

Section 505(a)(1) of the CWA confers subject matter jurisdiction to district courts over a civil action by any citizen, "against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). A claim against the United States under the CWA citizen-suit provision operates as a waiver of sovereign immunity from suit. *See id.* ("The district courts shall have jurisdiction...to enforce such an effluent standard or limitation."); *see generally U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 614 n.5 (1992). A violation of "effluent standard or limitation" for this purpose includes "an unlawful act under" 33 U.S.C. § 1311(a), which is the "discharge of any pollutant by any person" except in compliance with the provisions of the statute and certain other statutes.

The parties dispute whether the Plaintiffs have alleged that the Corps has violated "an

effluent standard or limitation," conferring subject matter jurisdiction upon the Court.  The Corps argues that its contested actions involve its regulatory and administrative activities and not its activities as a discharger, and thus review of its actions under the CWA citizen-suit provision is not permitted.  Conversely, Plaintiffs argue that their claims against the Corps are targeted to the Corps' capacity as a regulated party subject to the Section 404(b)(1) guidelines, and not to the Corps' capacity as a regulator of other parties.

In order to put this matter in perspective, the Court will now review the instructive case law on the issue.  Beginning with *Bennett v. Spear*, 520 U.S. 154 (1997), the United States Supreme Court was presented with the similar question of whether there was subject matter jurisdiction over a citizen-suit claim under the Endangered Species Act ("ESA") challenging a biological opinion issued by the Fish and Wildlife Service ("FWS").  The Court concluded it lacked jurisdiction to review the claims on the basis that the citizen-suit statute "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties-both private entities and Government agencies-but is not an alternative avenue for judicial review of the [FWS's] implementation of the statute."  *Id*. at 173.  The Court reasoned that the FWS's "failure to perform [its] duties as administrator of the ESA" did not constitute an action reviewable under the ESA citizen-suit provision.  *Id*.  Additionally, the Court noted "[w]e know of no precedent for applying such a provision against those who administer (as opposed to those who are regulated by) a substantive law."  *Id*. at 173-74.  Finally, the Court expressed concern that permitting citizen-suits against the FWS in administering the ESA "would effect a wholesale abrogation of the APA's 'final agency action' requirement."  *Id*. at 174.

Notably, courts have applied the reasoning in *Bennett* regarding the EPA citizen-suit

provision to citizen-suit claims under the CWA. *See Our Children's Earth Found. v. EPA*, 527 F.3d 842, 847 (9th Cir. 2008)(characterizing EPA citizen-suit provision as "parallel" to the CWA citizen-suit provision). For example, in *Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563 (N.D. Tex. 1997), the Northern District of Texas relied largely on *Bennett* in resolving a motion challenging its jurisdiction over a CWA citizen-suit claim against the EPA which alleged the EPA improperly failed to take action against and condoned the designation of certain large feedlots as non-point pollution sources under the CWA. *Id.* at 565. The court concluded that "the *Bennett* decision is equally applicable to the nearly identical 'citizen suit' jurisdictional provision of the CWA." *Id*. at 567. Looking to the reasoning in *Bennett*, the court held that it lacked jurisdiction over this claim because it was against the EPA in its capacity as administrator of the CWA, not as a violator of an EPA effluent standard. *Id*. at 567-68.

Similarly, in *Stewart v. Potts*, 938 F.Supp. 678 (S.D. Tex. 1997), the Southern District of Texas was presented with a motion seeking dismissal of the CWA citizen-suit claims against the Corps arising from the Corps' issuance of a permit to construct a golf course on a tract of forest and wetlands. The court granted the motion, holding, consistent with *Bennett*, "citizen groups [] cannot maintain suit against the Corps of Engineers under section 505(a)(1) of the CWA for an alleged violation of the Corps' duty to administer the section 404 permit program." *Id*. at 681-82. The court reasoned, "[s]ection 505(a)(1) provides a private cause of action only against regulated parties for substantive violations of the CWA. In its administrative capacity, the Corps is not a regulated party that can violate a substantive provision of the CWA." *Id*. at 682.

The Court will return to these cases after it addresses the language of CWA citizen-suit provision itself. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc*., 484 U.S. 49

11

(1987)(quoting *Consumer Prod. Safety Comm'n v. GTE Syvania, Inc*. 447 U.S. 102, 108 (1980))("It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.'"). As noted above, under the CWA citizen-suit provision, subject matter jurisdiction is conferred over a "civil action" against a "governmental...agency" when such agency "is alleged to be in violation of (A) an effluent standard or limitation." 33 U.S.C. § 1365. "Effluent standard or limitation" has a number of definitions, including "an unlawful act under subsection (a) of section 1311," which in turn is defined as "[e]xcept as in compliance with [section 1311] and....[the 404(b)(1) guidelines] of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311. The 404(b)(1) guidelines are issued by the EPA and the Corps for dredge and fill permits issued by the Corps. *See* 33 U.S.C. § 1344(b)(1); 33 C.F.R. § 320.4. Any discharge by the Corps itself must also comply with "all applicable substantive legal requirements, including...application of the section 404(b)(1) guidelines." 33 C.F.R. § 336.1.

In the present case, the Plaintiffs allege that the Corps has failed to comply with the Section 404(b)(1) guidelines, 33 U.S.C. § 1344, and the effluent limitations provision of the CWA, 33 U.S.C. § 1311. *See* (R. Doc. 1)(No. 10-1715)(Compl. ¶ 102). Specifically, Plaintiffs claim, (1) the Corps is taking steps to discharge and is discharging dredged material from a point source to waters of the United States; (2) the Corps has failed to select practicable alternatives that would have less adverse environmental impacts than the proposed actions; and (3) the Corps' discharges will cause or contribute, after consideration of disposal site dilution and dispersion, to violations of the applicable state water quality standard. *Id*. at ¶¶¶¶ 98-101. Thus, at first blush it appears that the Plaintiffs have properly alleged a claim under the CWA citizen-suit against the

Corps for its discharge and disposal activities.

However, the Corps has submitted the Declaration of Mark Wingate, Chief of the Project Management Branch for the Corps in New Orleans, who states that the only remaining funding for the lock project will be used during the 2011 fiscal year "to continue public coordination efforts and monitor submittals under the two design projects," and that all non-federal funding can only be used in coordination with Congressionally-appropriated federal funding. (R. Doc. 163-1)(No. 03-370). Additionally, Mr. Wingate's Declaration provides that the earliest construction activities could begin, subject to funding being made available, is the 2012 fiscal year, and even in that case, dredging activities would not occur until fiscal year 2018. *Id*. Even Plaintiffs' Complaint acknowledges no money is currently allotted to the project for 2010 and 2011. *See* (R. Doc. 1)(No. 10-1715)(Compl. ¶ 53). Based upon the Declaration and Complaint, the Court finds that the Corps is not actually discharging at this time or in the near future because it lacks the funds to do so. Because a violation of an effluent standard or limitation cannot occur without a discharge activity, *see* 33 U.S.C. § 1311, there exist no genuine issues of material fact which support Plaintiffs' CWA citizen-suit allegations.

The applicable case law discussed above further supports that a CWA citizen-suit claim cannot be brought against the Corps, at least at this time. These cases uniformly hold that a CWA citizen-suit claim cannot be brought against a government agency in its capacity as *administrator* of the CWA.[2] *See Bennett*, 520 U.S. 154, 173-74 ("[T]he term 'violation' does not

---

[2]However, when the Corps itself is discharging, it is no longer operating in its administrative capacity, and would be subject to, rather than applying, the 404(b)(1) guidelines. Indeed, the CWA contemplates that the Corps may act within the substantive provisions of the Act, just as a third-party would, as well as be regulated thereby. *See* 33 C.F.R. § 336.1(a). The only difference between the regulation of the Corps and third-parties with regard to discharging under the CWA is that third-parties must obtain a permit from the Corps to discharge, *see* 33

include the Secretary's failure to perform his duties as *administrator* of the ESA....We know of no precedent for applying [a citizen-suit provision] against those who *administer* (as opposed to those who are regulated by) a substantive law.")(emphasis added); *Cross Timbers*, 991 F.Supp. 563, 568 ("Federal jurisdiction does not arise...for a citizen suit against EPA as *administrator* of the Clean Water Act.")(emphasis added); *Stewart*, 983 F.Supp. 678, 681 ("[T]he citizen groups here cannot maintain suit against the Corps of Engineers under....the CWA for an alleged violation of the Corps' duty to *administer* the...permit program....In its *administrative capacity*, the Corps is not a regulated party that can violate a substantive provision of the CWA.")(emphasis added).  Here, the Corps is acting in such an administrative role; it is in the decision-making and planning stage, the functional equivalent of issuing a permit to a third-party before that party discharges, just as the government agencies in the cases discussed above. Accordingly, the Court may not exercise subject matter jurisdiction over the CWA citizen-suit claims against the Corps.  Nonetheless, if the Corps moves beyond the administrative stage and begins discharging in a manner that the Plaintiffs believe violates the 404(b)(1) guidelines they may be entitled to bring a CWA citizen-suit claim against the Corps at that time, but that is for another day.

      **D.**     **Subject Matter Jurisdiction-*Gwaltney* Claim**

Although the Court has already determined that it lacks subject matter jurisdiction over the CWA citizen-suit claims, it finds it appropriate to address Plaintiffs' alternative basis for jurisdiction-that the Court has jurisdiction over their CWA citizen-suit claims since the claims

---

U.S.C. § 1344, while the Corps, although governed by the same discharge standards as third parties, has no obligation to obtain a permit before discharging.  *See* 33 C.F.R. § 336.1(a).

are "forward-looking" and constitute good faith allegations of an effluent standard or limitation violation. Plaintiffs rely solely upon *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987), for this contention, and thus this is where the Court begins its analysis.

In *Gwaltney*, 484 U.S. at 57, the Supreme Court held that subject matter jurisdiction under the CWA citizen-suit provision is conferred when "citizen-plaintiffs allege a state of either continuous or intermittent violation-that is, a reasonable likelihood that a past polluter will continue to pollute in the future." The Court remarked that the CWA citizen-suit provisions "make plain that the interest of the citizen-plaintiff is primarily forward-looking," and "the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." *Id.* at 59. The Court also recognized "'a conscious sensitivity [of Congress] to the practical difficulties of detecting and proving chronic episodic violations of environmental standards.'" *Id*. at 65. However, the Court conceded that these "good-faith allegations" may be challenged. *Id*. at 66.

In the present case, Plaintiffs allege that the Corps is "taking steps to" and "discharging" dredged material from a point source to waters of the United States in violation of the Section 404(b)(1) guidelines. (R. Doc. 1)(No. 10-1717)(Compl. ¶¶ 98, 99). Plaintiffs claim this constitutes a good faith allegation since in making it they relied upon the Corps' record of decision which approved continued construction of the lock, including the disposal of large volumes of material hydraulically dredged during lock construction, as well as press reports stating the Corps has resumed work to build a wider and deeper lock.

However, as mentioned previously, according to the Declaration submitted by the Corps, there are currently no funds allocated to the construction of the Corps' lock project, effectively preventing the Corps from any discharging until fiscal year 2018 at the earliest, if ever. *See* (R.

15

Doc. 163-1)(No. 03-370). According to the Corps, these statements, along with the fact that Plaintiffs' Complaint acknowledges no money is currently allotted to the project for 2010 and 2011, renders Plaintiffs' allegations insufficient to confer jurisdiction under *Gwaltney*. The Court agrees. Plaintiffs' have failed to produce evidence of the Corps actually discharging. They have also failed to demonstrate that the Corps has committed a "continuous or intermittent violation," or "a reasonable likelihood" that the Corps has polluted in the past and will continue to do. Thus, the Plaintiffs' CWA citizen-suit claims fail to meet the *Gwaltney* standard for good faith allegations.

      E.      **Ripeness**

The Corps' alternative argument in support of its Motion to Dismiss Plaintiffs' CWA claims is that these claims are unripe. The Corps' basis for this argument is, once again, that it is not able to discharge dredged or fill material in violation of the CWA because it has yet to receive sufficient funding to do so, nor will it do so in the near future since the dredging project is not included in the 2011 fiscal year budget.

In response, Plaintiffs argue that their CWA claims are ripe since, (1) almost $15 million was appropriated for the project prior to the Court's injunction, (2) their CWA claims include challenges to the Corps' failure to select practicable alternatives in its completed supplemental EIS, and (3) the Corps has issued its record of decision, announcing its intent to engage in continued construction.

In the administrative law context, courts have traditionally been reluctant to apply injunctive and declaratory judgment remedies unless they arise from a controversy ripe for judicial resolution. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1977), *abrogated on other*

*grounds*, 430 U.S. 99 (1977). The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id*. at 148-49. A claim is not ripe when it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide*, 473 U.S. 568, 581 (1985)(quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Copper, Federal Practice and Procedure § 3532 (1984)). The ripeness determination requires an evaluation of both, (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Whitman v. American Trucking Associations*, 531 U.S. 457, 479 (2001)(quoting *Texas v. United States*, 523 U.S. 296, 300-01 (1998)).

Turning to the first consideration, the fitness of the issues for judicial decision, the Court must determine whether the lack of funding for the Corps' project renders the Plaintiffs' CWA claims arising from that project unripe. The Corps cites two cases which support its position. The first of these cases, *Texas Bio- & Agro-Defense Consortium v. United States*, 87 Fed.Cl. 798, 805 (Fed. Cl. 2009), held that the selection of a proposed site selection was not ripe for review in part because Congress had not yet appropriated the requisite funding for the planned facility. The second case cited by the Corps is *Tait v. City of Philadelphia*, 639 F.Supp.2d 582, 594 (E.D. Pa. 2009). In *Tait*, the court held that a claim against a city to prohibit enforcement of a law was unripe on the basis that the city lacked the financial resources to implement the law. *Id*. at 593-94. Both of these cases demonstrate that a claim seeking to enjoin government

17

activity is unripe when that activity cannot be practically implemented due to lack of funding. This is the exact scenario before the Court-Plaintiffs seek to enjoin the Corps from discharging, but the Corps is prevented from discharging because it lacks sufficient funds therefor. Thus, under the first prong of the ripeness analysis, the Court finds that the CWA claims are not fit for review, at least at this juncture while funding is unavailable.

The second prong of the ripeness analysis is hardship to the parties if the Court withholds consideration. Delay of consideration of the CWA citizen-suit claims would not harm the Plaintiffs at this time since without sufficient funding the Corps is unable to implement any construction stages of the lock, including the contested potential discharge. Additionally, even without their CWA claims, Plaintiffs may pursue their other two causes of action which properly allege challenges to the Corps' planning and decision-making. Thus, the Court leaves its consideration of the CWA claims for another day when the issues are fit for review and Plaintiffs would suffer hardship without consideration thereof.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant United States Army Corps of Engineers' Motion to Dismiss Plaintiffs' Third Cause of Action Under the Clean Water Act, (R. Doc. 146), is GRANTED, and Plaintiffs' claims under the Clean Water Act are dismissed without prejudice.

New Orleans, Louisiana this 29th day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE